UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| MATTHEW FRANK MURNANE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 12-164-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Matthew Frank Murnane ("Murnane" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 11, 13] Murnane contends that the Administrative Law Judge ("ALJ") erred in finding that he is not entitled to a period of disability and Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). He seeks reversal of the ALJ's decision and an award of benefits or, in the alternative, remand for further consideration. The Commissioner asserts that the ALJ's decision was proper and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion for summary judgment and deny the relief sought by Murnane.

-1-

# I.

On April 27, 2009, Murnane applied for a period of disability and DIB under Title II of the Act.  He alleges a disability beginning January 1, 2003.[1]  [Tr., pp. 28, 70-75]  His application was denied initially and upon reconsideration.  [*Id.*]  On January 14, 2011, an administrative hearing was held by video.  Murnane appeared and testified in Cincinnati, Ohio, while ALJ Daniel Dadabo presided from Evanston, Illinois.  [Tr., pp. 42-69]  Larry Hicks, Murnane's attorney, along with vocational expert ("VE") William J. Kiger were also present at the hearing.[2]  [*Id*.]  ALJ Dadabo issued a decision on March 23, 2011, finding that Murnane was not disabled under sections 216(i) and 223(d) of the Act.  [Tr, pp. 28-36]

Murnane was fifty-three years old at the time of the ALJ's decision.  [Tr., pp. 25, 45]  He has completed three years of college and has prior work experience as a self-employed used car dealer/dealership owner and operator, and auto sales manager.  [Tr., pp. 30, 45-46]  His alleged disability results from severe hip impairment with status post hip replacement and revisions and a major staph infection in his left hip.  [Tr., pp. 32, 83]  After reviewing the record and testimony presented during the hearing, the ALJ concluded that Murnane suffered from a severe impairment of avascular hip necrosis with status post hip replacements and revisions.[3]  [*Id.*]  Notwithstanding this impairment, he found that Murnane

---

1 Murnane's date of last insured was December 31, 2004. [Tr., pp. 28, 30, 178]

2 Following Murnane's hearing before ALJ Dadabo, additional evidence was admitted into the record. [Tr., p. 28]

3 ALJ Dadabo concluded that Murnane did not have an impairment that met or equaled a listed impairment.  [Tr., p. 31]

retained the residual functional capacity ("RFC") to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b).  [Tr., pp. 32-35] In relevant part, ALJ Dadabo "decline[d] to infer that through the date [of] last insured, the claimant was unable to work on uneven surfaces, around operating machinery[,] or operate foot controls." [Tr., p. 35]

Based on the VE's testimony, the ALJ found that Murnane could perform his past relevant work as a small business manager, buyer, and sales representative at the light level of exertion, as well as an auto sales manager, generally performed at the sedentary level. [Tr., pp. 35, 66-67]  After finding that Murnane could perform past relevant work, the ALJ concluded that he was not disabled.  [Tr., p. 35]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

-4-

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III.

Murnane argues that the Commissioner's determination should be overturned because it is not supported by substantial evidence. More specifically, he contends that: (1) the ALJ impermissibly "played doctor" when making his RFC determination; (2) the ALJ's RFC

determination fails to meet the requirements of SSR 96-8p and does not properly explain the basis for Murnane's RFC assessment; and (3) the ALJ violated the treating physician rule when weighing the opinions of Dr. Joel I. Sorger, Orthopedist.  [Record No. 11] However, the Commissioner argues that the decision denying benefits to Murnane is supported by substantial evidence.

### A.    Murnane's RFC

As an initial matter, Murnane argues that the ALJ erred in making RFC findings based on his "own non-expert 'reading of the record.'"  Because the ALJ is not a medical expert, he asserts that these determinations were erroneous.  [Record No. 11, p. 8 (citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963) (the Secretary may not supplant his own opinions regarding physical disabilities for those of uncontradicted medical experts))].  This argument, however, is misplaced.

The RFC determination is a matter reserved for the ALJ.  *See* 20 C.F.R. § 404.1520(a)(4) (outlining the five-step sequential evaluation process used to ascertain whether a claimant is disabled).  *See also Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004) ("[The RFC] determination is expressly reserved for the Commissioner.").  In making this determination, the ALJ considers the medical evidence, non-medical evidence, and the claimant's credibility.  *See* 20 C.F.R. §§ 404.1545(a)(1), (3) & 404.1546(c).  The Sixth Circuit has recognized that "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an

assessment of the claimant's residual functional capacity." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (internal quotation marks and citation omitted). Moreover, an ALJ "does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Id.* (citations omitted). The ALJ also need not "give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(3). An ALJ's finding on the RFC will be upheld where it is supported by substantial evidence.

### 1.      Credibility Determination

Murnane argues that the ALJ did not properly evaluate his subjective complaints when determining his RFC. [Record No. 11, pp. 7-9] He asserts that ALJ Dadabo's reliance on written statements submitted as part of the application for benefits was in error. [Record No. 11, p. 7] He implies that the ALJ should have been confined to only testimony at his hearing in evaluating his credibility. However, he cites to no authority for this proposition. Instead, contrary to Murnane's argument, the Social Security regulations require the ALJ to review *all* evidence in the record when making an RFC determination. *See* 20 C.F.R. § 404.1545(a) (emphasis added). Additionally, the written documents that ALJ Dadabo relied on were records Murnane submitted. These records detail extensive daily activities which embody relevant considerations in evaluating Murnane's credibility. The ALJ did not err in considering these materials.[4]

---

4       Moreover, a comparison of the Claimant's testimony and his written submissions demonstrates that there is little to no substantive difference.

Credibility determinations regarding a claimant's subjective complaints of pain rest with the Commissioner. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Such determinations are entitled to a great amount of deference. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Williamson v. Sec'y of Health and Human Servs.*, 796 F.2d 146, 150 (6th Cir. 1986). This is because the ALJ is in a unique position to "observe the claimant and judge [his] subjective complaints." *Buxton*, 246 F.3d at 773. In fact, an ALJ is "charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. As a result, an ALJ's credibility determinations are "entitled to deference on judicial review." *Boyett v. Apfel*, 8 F. App'x 429, 434 (6th Cir. 2001). However, if the ALJ "rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Brown*, 35 F.3d 1027, 1036 (6th Cir. 1994).

Here, the ALJ found that Murnane's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with his RFC. [Tr., p. 33] ALJ Dadabo clearly stated his reasons for finding Murnane's testimony not entirely credible. For instance, the ALJ considered Murnane's work history and daily activities and found them to be inconsistent with his complaints. [Tr., pp. 33-34] Murnane indicated that does small loads of laundry, visits friends, attends church, drives his car, goes shopping, takes his daughter to school. Further, he traveled by car for over forty-five minutes to Columbus, Ohio for a doctor's appointment.

-8-

[Tr., pp. 34, 207-212] ALJ Dadabo correctly weighed these activities in determining that Murnane's subjective statements conflicted with his own accounts of daily activities. *See Buxton*, 246 F.3d at 775 (noting that the claimant's ability to shop for herself, do light cleaning, cook, drive, and exercise daily contradicted her claim that she could not work); *see also Walters*, 127 F.3d at 532 (noting that an ALJ may consider a claimant's engagement in household and social activities in assessing his assertions of pain and ailments).

The evidence also indicates that Murnane continued to work as a car dealer as late as 2008. [Tr., pp. 34, 52-53] The Claimant testified that he attended approximately three auto auctions in 2004 and the same number in 2010. [Tr., pp. 53, 57-59] He stated that, at these auctions, he would stand for forty-five minutes to an hour, walked around the vehicles that were up for auction, and stood during the bidding sessions. [Tr., pp. 57-59] ALJ Dadabo also noted that Dr. Sorger indicated that Murnane "works one of his jobs as a used car salesman. He goes to a lot of automobile shows . . . ." [Tr., p. 632] The ALJ properly considered this evidence, finding that Murnane's continued work as a car dealer, even at a reduced rate, undermined his credibility. [Tr., p. 34; *see Blair v. Comm'r Soc. Sec.*, 430 F. App'x 426, 427-428 (6th Cir. 2011) (affirming ALJ's adverse credibility determination where the claimant worked part time from home after her alleged onset date of disability, drove her car daily, picked up her children from the bus, went to church, and visited family and friends); *see also Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 811 (6th Cir. 2012).]

Additionally, ALJ Dadabo's credibility determination was based on objective medical evidence and treatment history that Murnane received for his hip ailments.  *See* 20 C.F.R. § 404.1529(c)(3)(v) (noting that the Commissioner will consider the treatment a claimant receives for relief of his pain or other symptoms).  The ALJ found that "[d]espite undergoing multiple surgeries before the date last insured, including the January 2003 left hip revision, which certainly suggests that the symptoms were genuine, the record otherwise reflects that [the] surgeries generally were successful in relieving the symptoms through the date of last insured."[5]  [Tr., p. 33]

Dr. George Shybut, M.S., who operated the claimant's hip in 2003, noted that, post-operatively, oral analgesics controlled Murnane's pain and he was able to complete his course of therapy.  [Tr., pp. 294-98]  This was also corroborated by Murnane's testimony that prescribed medication provided him pain relief.  [Tr., pp. 33, 203, 294; *see generally Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th 1984) (affirming ALJ's credibility determination where the claimant's condition was managed by medication); *see also Hardy v. Astrue*, No. 5:12CV1836, 2013 U.S. Dist. LEXIS 62942, at *35 (N.D. Ohio May 2, 2013) (affirming ALJ's credibility determination where ALJ found the claimant's use

---

5      The Claimant's contention that this finding contradicts the ALJ's ultimate RFC determination is without merit.  [Record No. 11, p. 7]  While the ALJ stated the obvious — that the Claimant undergoing surgery would suggest the surgery was actually warranted — the ALJ also found that the surgeries were generally successful in relieving the symptoms through the date of last insured.  [Tr., p. 33]  The ALJ then weighed other statements of the Claimant, along with medical and non-medical evidence in making his RFC determination.

of prescribed medication controlled pain as well as the claimant's experienced improvement after physical therapy, coupled with his failure to further pursue such therapy).]

Murnane was also advised by Dr. Shybut to undergo physical therapy post surgery until he could walk independently.  [Tr., pp. 295] The Claimant concedes that, consistent with his medical records, he made progress during a number of therapy sessions in 2003.  [Record No. 11, p. 14; *see also* Tr., pp. 309-12.] Despite this progress, Murnane was later discharged from therapy in December 2003 after failing to contact the therapy center since November 2003.  [Tr., pp. 294-95, 309-13; *see Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 596 (6th Cir. 2005) (noting that a physician's prescription of only physical therapy constituted substantial evidence that supported the ALJ's RFC finding that the claimant could perform an "adequate range of light work").]   ALJ Dadabo also inferred that Murnane's failure to continue with physical therapy indicated that the Claimant no longer thought he needed it.  [Tr., p. 33; *see* 20 C.F.R. § 404.1530 (noting that absent good reasons, the claimant "must follow [the] treatment prescribed by [his] physician if this treatment can restore [his] ability to work").]   The ALJ permissibly considered Murnane's failure to continue with physical therapy in making his credibility determination. *See Tippett v. Colvin*, No. 6:12-cv-239-JMH, 2013 WL 3233579, at *7 (E.D. Ky. June 24, 2013); *see also Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) (a claimant's noncompliance with physician's directions or prescribed treatment is valid reason to discredit his subjective allegations).

In light of the deference given to the ALJ regarding the Claimant's credibility and subjective complaints of pain, as well as the fact that he clearly stated his reasoning for the weight afforded to Murnane's complaints, the Court finds no error with the ALJ's determination of Murnane's credibility.[6]   The ALJ properly considered the medical and non-medical evidence of record and Murnane's own testimony in determining the RFC. Substantial evidence supports the ALJ's determination of Murnane's RFC.

### 2.     State Agency Single Decision Maker & Non-Examining Physician Opinions

Murnane also contends that the ALJ erred in the weight that he assigned to the opinions of state agency decision maker ("SDM") Jeremy Vincent and state agency medical consultant Amanda Lange, M.D., when determining his RFC.  [Record No. 11, pp. 10-11] More specifically, he argues that SDM Vincent and Dr. Lange expressed no opinion regarding his impairments and that the ALJ "erred in ascribing 'great weight'" to the findings of Vincent and Dr. Lange because they "never rendered an RFC opinion."  [*Id.*, p. 11] Murnane concludes that "these 'non-opinions' cannot be 'substantial evidence' to support the [ALJ's RFC determination]."  [*Id.*]

---

6     The Claimant contention that the ALJ used "boilerplate, robo-decision language criticized by the Seventh Circuit in *Parker v. Astrue*, 597 F.2d 920, 921-22 (7th Cir. 2010)," also lacks merit.  As noted above, ALJ Dadabo properly considered the Murnane's credibility and he sufficiently explained his reasoning for the weight given to Murnane's subjective complaints.  While the ALJ used language that has been criticized by some courts, he also considered Murnane's testimony, comparing it to the other evidence as well as prior written statements of the Claimant.  [Tr., pp. 32-34]

However, the Claimant is incorrect in contending that SDM Vincent and Dr. Lange did not express opinions. [Record No. 13, p. 10]  On July 14, 2009, SDM Vincent reviewed the evidence and opined that there was "insufficient evidence to establish the presence of any condition which would have prevented the claimant from working on or before December 31, 2004." [Tr., p. 558]  Dr. Lange affirmed Vincent's findings on November 10, 2009. [Tr., p. 600]  In essence, Dr. Lange affirmed Vincent's finding that there was insufficient evidence to establish that Murnane suffered from a disabling condition during his insured period. [Tr., pp. 558, 600]  Thus, Vincent and Dr. Lange expressed opinions that there was no evidence in the record to support a finding of disability.

It was proper for ALJ Dadabo to consider the opinion of state agency medical consultant Dr. Lange.[7]  *See* 20 C.F.R. § 404.1527(e).  And because state agency consultants are considered experts in the Social Security disability programs, their opinions may be entitled to great weight if such opinions are supported by the evidence in the record.  *See* 20 C.F.R. § 416.1527(f)(2); SSR 96-6p, 1996 WL 374180 (July 2, 1996); *see also Hibbard v. Astrue*, 537 F. Supp. 2d 867 (E.D. Ky. 2008).  Additionally, SSR 96-6p provides that, "[i]n appropriate circumstances, opinions [of non-examining physicians] may be entitled to greater

---

7    ALJ Dadabo did not specifically state the weight he afforded SDM Vincent's opinion.  Instead, he evaluated SDM Vincent's opinion in his discussion of Dr. Lange's opinion.  He noted that "[a]s for the opinion evidence . . . the undersigned has accorded great weight to the opinion of the State agency consultant [Dr. Lange] affirming the opinion of the State consultant [SDM Vincent], insofar as the evidence is insufficient to support greater limitations than determined herein." [Tr., p. 35]

weight than the opinions of treating or examining sources."  SSR 96-6p, 1996 WL 374180 (July 2, 1996).

ALJ Dadabo properly considered and weighed the opinions of Dr. Lange after he examined all the evidence presented.  [Tr., p. 35]  The ALJ specifically discussed the Claimant's hip surgeries in 2000 and 2003, his physical therapy treatment, as well as his subjective complaints, work history, and daily living activities.  [Tr., pp. 33-35]  The ALJ also noted that, despite Murnane presenting himself "to the emergency room for left hip complaints in July 2003 and November 2003, fearing infection or loosening" of his hip implants,  "[a] bone scan obtained in November 2003, [] did not evidence infection."  [Tr., p. 33]  Further, the ALJ considered a February 2004 "follow-up whole body bone scan" which failed to show more than mild changes in the hips compared to a bone scan that was obtained in 2001 before the revision, as well as further imaging obtained in October 2004 that "revealed the joint prosthesis to be unremarkable, with no evidence of fracture or loosening."  [Tr., pp. 33, 439, 442, 634]  The ALJ appropriately evaluated the opinions of Dr. Lange – and by implication the opinion of SDM Vincent.

### 3.      RFC Assessment & Requirements of SSR 96-8p

Murnane contends that ALJ Dadabo did not comply with SSR 96-8p in determining his RFC.  [Record No. 11, p. 12]  He argues that the ALJ's failure to include a function-by-function assessment was erroneous.  [*Id.*]  SSR 96-8p requires that the ALJ's RFC assessment "include a narrative discussion describing how the evidence supports each

conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." SSR 96-8p, 1996 SSR LEXIS 5, at *19 (July 2, 1996). "The adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule)." *Id.*; *see also Sims v. Apfel*, 172 F.3d 879, 880 (10th Cir. 1999) (defining a "regular and continuing basis" as "8 hours a day, for 5 days a week"). Further, SSR 96-8p requires the ALJ to individually assess the exertional and non-exertional capacities of the claimant in determining his RFC. 1996 SSR LEXIS 5, at *15-19.

In *Delgado v. Commissioner of Social Security*, the Sixth Circuit rejected the claimant's argument that SSR 96-8p requires an ALJ to include a function-by-function discussion in his determination of the claimant's maximum capacity to perform each work-related activity. 30 F. App'x 542, 547-48 (6th Cir. 2002). The court noted that, "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Id.* at 548 (quotation marks and citation omitted); *see also Boatwright v. Comm'r Soc. Sec.*, No. 11-14427, 2013 U.S. Dist. LEXIS 36145, at *29-30 (E.D. Mich. Feb. 20, 2013) (report and recommendation), *adopted by* No. 11-14427, 2013 U.S. Dist. LEXIS 35152, at *1 (E.D. Mich. Mar. 14, 2013). The court further opined that the ALJ is only required to articulate how the evidence of record supports the RFC determination, discuss the claimant's ability to perform work-related activities, and explain the resolution of any inconsistencies in the record. 30 F. App'x at 547.

Here, the ALJ considered each of Murnane's symptoms that were supported by evidence in the record. [Tr., p. 32 ("In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.")] He discussed the limitations those symptoms would place on Murnane's ability to work and determined that the Claimant could perform a full range of light work as defined in 20 C.F.R. § 404.1567(b). [Tr., pp. 32–35] Moreover, the ALJ found that the Claimant had not provided any medical evidence relating to the relevant time period which undermined his RFC conclusion. [Tr., p. 35] Ultimately, with the testimony of the VE, he concluded that Murnane could perform his past relevant work on a regular and continuing basis. [Tr., p. 35] The ALJ provided a narrative discussion of Murnane's symptoms, their effect on his work, and how he reached those conclusions. Thus, the narrative he provided complied with the requirements of SSR 96-8p.

Next, the Claimant alleges that the ALJ erred in determining that he had the ability to perform the full range of light work, absent any specific documentation that explicitly stated such. [Record No. 11, pp. 12-14] However, the RFC finding is based "on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). While the evidence "*may* contain medical opinions" that include statements which reflect judgments of what a claimant can still do despite his impairments, a medical source assessment of the claimant's limitations is not necessary to allow the ALJ to make his RFC determination.    20 C.F.R.

-16-

§ 404.1527(a)(2) (emphasis added); *see also* 20 C.F.R. 404.1545(a); *Bingaman v. Comm'r Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir.2009).

As noted above, the responsibility of determining the Claimant's RFC rests with the ALJ, not a physician. *See Coldiron*, 391 F. App'x at 439. And "[a]lthough the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x. 149, 157 (6th Cir. 2009). Further, the ALJ does not impermissibly assume the role of a medical expert by assessing the medical and non-medical evidence in determining the claimant's RFC. *See Ford v. Comm'r Soc. Sec.*, 114 F. App'x 194, 197 (6th Cir. 2004).

Thus, Murnane is wrong in contending that the ALJ's determination was erroneous because the state agency physicians did "not say claimant could do 'light' work" and because the "claimant did not say it, [] nor did the claimant's physicians say that claimant could do light work." [Record No. 11, p. 13] As noted above, such a determination is expressly reserved for the Commissioner. *See* 20 C.F.R. § 404.1546(c). ALJ Dadabo properly considered the evidence of record in assessing Murnane's RFC and expressly indicated his rationale for determining the claimant's RFC. Moreover, substantial evidence supports the ALJ's RFC finding.

Throughout his motion for summary judgment, Murnane alleges that certain medical records were not available to him at the time he filed his application for disability, or at the

time he filed his current Complaint.  More specifically, he contends that he "has been handicapped in obtaining *evaluative* information from his first treating source, Dr. Shybut, because Dr. Shybut [] was claimant's first hip surgeon who unknowingly implanted a defective hip replacement device which resulted in a lawsuit, which led Dr. Shybut to refuse to provide any further information."  [Record No. 11, p. 10 (emphasis in original)]  He asserts that this lack of medical information demonstrates that the Commissioner's decision is not based on substantial evidence.

However, it is well-settled that a claimant bears the ultimate burden of proving the existence of disability as defined by the Act.  *See Jones*, 336 F.3d at 474; *see also Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001);  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); 20 C.F.R. §§ 404.1512(a) & (c); 42 U.S.C. § 423(a), (c), (d)(5)(A).  Moreover, the burden of providing a complete record to enable the Commissioner to reach a disability determination rests with the Claimant.  *See* 20 C.F.R. §§ 404.1512(a) & (c); *Lancaster v. Comm'r of Soc.* Sec., 228 F. App'x 563, 571 (6th Cir. 2007); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable [the Commissioner] to make a disability determination, rests with the claimant."); *see also Rise v. Apfel*, No. 99-6164, 2000 U.S. App. LEXIS 26851, at *4 (6th Cir. Oct. 13, 2000) (noting that "[o]nly under special circumstances, when a claimant is without counsel, not capable of presenting an effective case, and unfamiliar with hearing procedures does the ALJ

have a special duty to develop the record") (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-525 (6th Cir. 1983)).

Thus, because it was neither the Commissioner's burden to prove that the Murnane was disabled, nor was it the Commissioner's responsibility to provide a complete record, the Claimant's argument is not well-taken.  The ALJ properly evaluated the evidence presented to him and reached the determination that the Claimant was not disabled.

### B.    Dr. Joel I. Sorger

Murnane argues that ALJ Dadabo failed to provide good reasons for discounting the opinion of Dr. Joel I. Sorger, as set out in his January 20, 2011 narrative medical history letter.  [Record No. 11, pp. 14-16]  In this letter, Dr. Sorger outlines the Claimant's medical history and treatment since May 2005.  [Tr., pp. 631-32]  Dr. Sorger also endorsed his application for disability benefits and opined that he does not believe that the Claimant can return to his past employment in a full-time capacity.  [Tr., p. 632] But contrary to Murnane's assertions, the ALJ considered Dr. Sorger's opinions and found them to be inconsistent with his own treatment records.  As a result, he afforded Sorger's opinions little weight.

As a general rule, the ALJ gives "more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not."[8]   20 C.F.R.

---

8    An ALJ must consider several factors in determining what weight to give medical opinions, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c).

-19-

§ 404.1527(c)(1).  Additionally, Social Security regulations require an ALJ to give "good reasons" for the weight accorded to the opinion of the claimant's treating physician.  20 C.F.R. § 404.1527(c)(2); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  However, there is no such requirement for the opinions of examining medical sources.  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (noting that the Social Security Administration "requires ALJs to give reasons for only *treating* sources" (emphasis in original)).  The ALJ is also "'not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 509 (6th Cir. 2006) (per curiam) (quoting *Buxton,* 246 F.3d at 773).  The regulations also provide that a physician's opinion regarding whether a claimant is disabled or unable to work will be given no "special significance."  20 C.F.R. § 404.1527(e)(3).

As noted above, Dr. Sorger's letter indicates that he did not meet the Claimant until May 24, 2005 (after the initial onset date), and approximately five months after the expiration the Claimant's insured status.  [Tr., p. 631] Because Dr. Sorger neither examined nor treated the Claimant during his period of insured status, he was not a treating physician and his opinions are not entitled deferential review.  *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517 (6th Cir. 2010) (holding that a "treating physician's opinion is minimally probabtive when the physician began treatment after the expiration of the claimant's insured status") (internal citation omitted); *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004)

-20-

("Evidence of disability obtained after the expiration of insured status is generally of little probative value."); *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (a treating physician's opinion was minimally probative because the physician did not see the claimant for the first time until eight months after the expiration of his insured status); *Carey v. Astrue*, No. 11-cv-11010, U.S. Dist. LEXIS 61665, at *30-31 (E.D. Mich. Apr. 11, 2012) (report and recommendation) *adopted by* No. 11-11010, 2012 U.S. Dist. LEXIS 61386 (E.D. Mich. May 2, 2012).

Murnane concedes that Dr. Sorger's opinion does "not address with any degree of certainty the period of time from January 1, 2003 through December 31, 2004" because he did not begin treating Murnane until May 2005.  [Record No. 11, p. 16]  He argues that Dr. Sorger's letter "describe[s] what sounded like claimant's condition when Dr. Shybut operated [on him] in May 2003, however, the report omits dates."  [*Id.*]  In short, Dr. Sorger was not the Claimant's treating physician during Murnane's period of last insured.  And ALJ Dadabo "was under no special obligation" to provide a detailed discussion of his reasoning behind the weight given to the opinions of Dr. Sorger.  *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012).

While Murnane makes the superficial assertion that Dr. Sorger's opinions should have been afforded "great weight" for the period he treated him, medical evidence post-dating the Claimant's date of last insured is generally immaterial.  *See Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) (affirming the ALJ's finding that certain medical source

-21-

opinions were credible but were not relevant since the opinions did not relate to the claimant's limitations prior to the date of last insured and were based on medical observations taken after the claimant's insured status expired); *Yamin v. Comm'r of Soc. Sec.*, 67 F. App'x 883, 885 (6th Cir. 2003) (affirming ALJ's finding that the claimant's medical source opinion made a year after claimant's date of last insured was not relevant to time prior to the expiration of the claimant's insured status); *Cf. Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988) ("Evidence which reflected the applicant's aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began."). The Claimant also makes no argument concerning how Dr. Sorger's opinions relate back to his limitations prior to his date of last insured, *see Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (a medical condition diagnosed after the date of last insured is only minimally probative of a claimant's condition during the insured period), and the Court is not required to make such arguments for the claimant. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

Notwithstanding the minimal weight to which Dr. Sorger's opinions are entitled, ALJ Dadabo reviewed his letter and concluded that it was inconsistent with his own treatment records. [Tr., p. 34] For instance, Dr. Sorger's treatment notes do not demonstrate the existence of disabling pain or limitations. Following the Claimant's hip revision surgery in 2006, he experienced some left thigh pain in April 2006 following his surgery, but the x-rays

-22-

of his left hip showed that the implant was in good position, his physical examination demonstrated that he had no increased pain with motion or weight bearing, and that "overall he [was] doing fine." [Tr., pp. 550-53]  The Claimant continued doing well through the rest of 2006 and into 2007, with one instance of knee pain.  [Tr., pp. 544-47]  Despite Murnane's subjective complaints of knee pain, Dr. Sorger's notes indicate that a physical exam showed that his knee motion was "excellent" and that his knee was "not really swollen," and that x-rays of his left knee show "minimal arthritic changes."  [Tr., p. 544]  Additionally, x-rays of his left hip exhibited "no change in position of the prosthesis."  [*Id.*]  In September 2006 Dr. Sorger noted that his limp was almost gone, and in November 2007 his notes state that the Claimant had no pain.  [Tr., pp. 546, 541]

Dr. Sorger's treatment notes from 2007 to 2010 indicate that the Claimant's condition continued to improve and that he was able to walk with out a cane or crutches in January 2008.  [Tr., pp. 534-40, 625-28]  And although his records state that the Claimant wore a brace in July 2009, Dr. Sorger noted that the Claimant was doing fine overall and had no new complaints.  [Tr., pp. 627-28]  Despite these observations, Dr. Sorger's January 2011 letter stated that the Claimant continued to have difficulty with pain and with a limp.  [Tr., p. 632]  However, notwithstanding the fact that this conclusion is contrary to Dr. Sorger's treatment notes, a physician's statement that only reiterates a claimant's subjective complaints of pain is not medical evidence.  *See Bass*, 499 F.3d at 509 (a doctor's report that merely repeats a patient's assertions about her level of pain and her condition is not objective medical

-23-

evidence); *see also Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009) ("A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to the protections of the good reasons rule."); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004).

ALJ Dadabo also found that Dr. Sorger's narrative letter failed to "add anything new as far as supported conclusions that would eliminate all work prior to the [date of last insured]." Particularly convincing to ALJ Dadabo was that even though Dr. Sorger began seeing the Claimant about six months after his date of last insured, in May 2005, he did not "demarcate a substantial deterioration until 2007, which [was] well after the [date of last insured]." [Tr., p. 34] And, as outlined above, even despite this deterioration, Dr. Sorger's treatment notes indicated that Murnane continued to progress. *See* 20 C.F.R. § 404.1527(c)(3)-(4) (noting that the Commissioner considers the supportability and consistency in determining the appropriate weight given to medical source opinions). In sum, the record demonstrates that the ALJ properly assessed the opinion of Dr. Sorger and provided proper explanation for discounting his opinion.

## IV.

Although Murnane has established that he suffers from some medical impairments, he has not established that he is disabled as defined by the Act. After reviewing the record, the Court does not find any of the Murnane's arguments persuasive. The ALJ did not

commit a reversible error and his decision is well supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

(1)     Plaintiff Matthew Frank Murnane's Motion for Summary Judgment [Record No. 11] is **DENIED**.

(2)     Defendant Caroyn W. Colvin's Motion for Summary Judgment [Record No. 13] is **GRANTED**.

(3)     The administrative decision of Administrative Law Judge Daniel Dadabo will be **AFFIRMED** by separate judgment entered this date.

This 20th day of September, 2013.



**Signed By:**

***Danny C. Reeves***

**United States District Judge**